# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| BLITZSAFE TEXAS, LLC, | |
| Plaintiff, | |
| v. | Civil Action No. 2:15-cv-01274-JRG-RSP |
| HONDA MOTOR CO., LTD. ET AL | (LEAD CASE) |
| Defendants. | **JURY TRIAL DEMANDED** |
| BLITZSAFE TEXAS, LLC, | |
| Plaintiff, | |
| v. | Civil Action No. 2:15-cv-01277-JRG-RSP |
| TOYOTA MOTOR CORPORATION ET AL | (CONSOLIDATED CASE) |
| Defendants. | **JURY TRIAL DEMANDED** |

## TOYOTA'S REPLY IN SUPPORT OF ITS MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL

Toyota submits this Reply to address issues raised in Plaintiff Blitzsafe Texas, LLC's Opposition to Toyota's Motion to Disqualify filed Sept. 29, 2016 (Dkt. 174) ("Blitzsafe's Opposition" or "Opp.").

## I.  INTRODUCTION

Blitzsafe does not dispute that Mr. Rubino was privy to, still remembers, and has shared with his colleagues, Toyota's most sensitive patent litigation strategies, including strategies for settlement, navigating local EDTX rules and procedures, and mediating before Judge Folsom. Blitzsafe argues only that this information is not "relevant" because the currently accused in-vehicle technology (in Blitzsafe's words, "interfaces which allow an external audio player to be connected to a car radio") is not exactly the same as the technology at issue during Mr. Rubino's prior representations of Toyota. Blitzsafe's argument is meritless.

The relevant conflict test is whether the "representation in reasonable probability will involve a violation" of the duty of confidentiality, not whether the accused technologies are necessarily identical. Here, Toyota has gone above and beyond the required showing, *see Duncan v. Merrill Lynch*, 646 F.2d 1020, 1028 (5th Cir. 1981) (the "party seeking disqualification is not required to point to specific confidences revealed to former attorney that are relevant to pending case"), and offered more than two dozen examples of confidential communications received by Mr. Rubino that go to the heart of Toyota's EDTX litigation, *Inter Partes* Review (IPR), and settlement strategy. While made in the context of the AVS matters, each of these communications sheds light on how Toyota is likely to litigate this similarly-situated case. Mr. Rubino even has knowledge of Toyota's confidential analyses of witnesses who may testify *at trial in this case*, and had personal responsibility for logging their privileged communications. It is of no moment that Mr. Rubino did not personally meet these witnesses,

1

enter an appearance in any of the prior litigations, or interact with in-house Toyota attorneys. The key fact is that Blitzsafe has not offered a declaration from Mr. Rubino, or otherwise denied, that he possesses, remembers, and has shared critical Toyota confidential information.[1]

Blitzsafe makes much of the fact that Toyota has known for months that Mr. Rubino was hired by Brown Rudnick, and asserts that the Berkowitz declaration is misleading for omitting this fact. But Mr. Rubino's mere hiring by Brown Rudnick is not the basis for Toyota's motion; as Mr. Berkowitz put it during his deposition, Toyota "assumed that Brown Rudnick and Mr. Rubino were honoring their ethical obligations . . . and that he was being screened off from the case." Berkowitz Tr.,[2] 156:8-13. Toyota "provided that professional deference." Berkowitz Tr., 156:13-14. This professional deference was not in any way a waiver or a license for Brown Rudnick to elevate Mr. Rubino from screened-off associate to integrated litigation team-member positioned to disclose and misuse Toyota's confidential information. When Toyota learned about Mr. Rubino's new role (through its own diligence, and not through notice by Blitzsafe), it objected within a matter of days, and filed a motion as soon as practical thereafter. No case law that Blitzsafe cites supports a theory that Toyota waived a right to object under these circumstances.

Toyota takes this issue very seriously. Should the Court deny this motion, it would all but eliminate Toyota's confidence that its attorney-client communications will remain confidential and not used to its disadvantage. *See* TEX. DISC. R. 1.05, cmt. 1. ("Free discussion should prevail between lawyer and client in order for the lawyer to be fully informed and for the

---

[1] Not only did Mr. Rubino not submit a rebuttal declaration, but Blitzsafe objected to his noticed deposition.

[2] Refers to the Deposition Transcript of Matthew G. Berkowitz, Exhibit A of the Fabricant Declaration submitted with Blitzsafe's Opposition.

client to obtain the full benefit of the legal system.")  As such, the Court should disqualify Brown Rudnick and grant Toyota the other relief requested in its briefing.

## II.   ARGUMENT

### A.   Blitzsafe Does Not Dispute that Mr. Rubino Was Privy To, and Still Remembers, Toyota's Highly Confidential Strategy Analyses Concerning EDTX Patent Litigation and Witnesses Who Will Testify in this Case

Nowhere in its 23-page response does Blitzsafe dispute that Mr. Rubino possesses the information outlined in the Berkowitz Declaration, that he remembers it, and that he has shared it with his colleagues at Brown Rudnick (and possibly, with McKool Smith).[3]

Blitzsafe simply argues that Mr. Rubino's Toyota knowledge-base is not "relevant," because, unlike the cases where Mr. Rubino represented Toyota, this case involves "connecting an external device such as an iPod or iPhone to a car's audio system using an interface."  Opp. at 7.  Blitzsafe slices this matter far too thin, and misstates the law.  Toyota need not show that the AVS matters Mr. Rubino worked on previously are "substantially related" to the present case.[4]  Rather, Mr. Rubino's present representation of Blitzsafe gives rise to an ethical conflict because he "possesses relevant, confidential information such that there is a reasonable probability that

---

[3] Regardless, Mr. Rubino is irrebuttably presumed to have shared the confidential information. *See Grant v. Thirteenth Court of Appeals*, 888 S.W.2d 466, 467 (Tex. 1994) ("any rule focusing on actual disclosure would place a virtually insurmountable burden on the party seeking disqualification, since the only persons who know whether confidences were actually shared will generally be the very lawyers seeking to avoid disqualification.")

[4] In any event, the "substantial relationship" analysis does not focus on whether the specifically accused technologies are identical, as Blitzsafe suggests, but on whether "reasonable persons" would understand the confidential information known to the conflicted attorney to be "important to the issues involved" in the case.  *In re Corrugated Container Antitrust Litigation*, 659 F.2d 1341, 1346 (5th Cir. 1981) (overruled on other grounds by *Gibbs v. Paluk*, 742 F.2d 181, 185 (5th Cir. 1984)); *Osborn v. District Court, Fourteenth Judicial District*, 619 P.2d 41, 47 n. 10, 48 (Colo. 1980) (the term "substantially related" is equivalent to the expression "facts of which are somewhat interwoven" or similar factual situations and legal questions).

3

the information could be used to the former client's disadvantage." *Abney v. Wal-Mart*, 984 F. Supp. 526, 528 (E.D. Tex. 1997). *Islander E. Rental Program v. Ferguson*, 917 F.Supp. 504, 511 (S.D. Tex. 1996) (disqualification is appropriate where the "confidences could be used to [the former] client's disadvantage in [the current] litigation") Further, a presumption attaches that a lawyer in possession of client confidences shares those confidences with other lawyers at his firm. *In re Am. Airlines* 972 F.2d at 614 n. 1 (*citing Corrugated Container,* 659 F.2d at 1346).

Here, Toyota has submitted evidence that Mr. Rubino spent more than 1500 hours over the last three years representing Toyota in patent litigation in the EDTX and parallel IPR proceedings (like the present matter).[5] *Compare Carbo Ceramics, Inc. v. Norton-Alcoa Proppants*, 155 F.R.D. 158, 162 (N.D. Tex. 1994) ("extremely confidential matters which are privileged may be communicated in a conversation of less than a few minutes, irrespective of whether or not billable time was generated."). While some of his prior representations concerned different Toyota technology (e.g., exterior vehicle monitoring systems), the thousands of confidential emails, memos, and presentations that Mr. Rubino reviewed while defending those prior cases are directly applicable to this matter. Toyota's unrebutted evidence demonstrates that Mr. Rubino knows Toyota's EDTX patent litigation strategy, how it mediates before Judge Folsom, and its different trigger points for settlement in view of various EDTX litigation outcomes and parallel IPR proceedings. He had access to Toyota's IPR strategy, which was not "general" as AVS suggests, but rather, as Mr. Berkowitz testified, "specific to Toyota, very specific to Toyota." Berkowitz Tr., 164:3-6. Even if those confidential discussions were made

---

[5] As indicated in the Motion, Toyota offers to submit the documents identified in the Berkowitz Declaration to the Court for *in camera* review.

4

in the context of the AVS matters, Mr. Rubino can surely use the playbook from that litigation to predict Toyota's next moves in this matter. *See Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 571 (2d Cir. 1973) ("Even the most rigorous self-discipline might not prevent a lawyer from unconsciously using or manipulating a confidence acquired in the earlier representation and transforming it to telling advantage in the subsequent litigation . . . The dynamics of litigation are far too subtle, the attorney's role in the process is far too critical, and the public's interest in the outcome is far too great to leave room for even the slightest doubt concerning the ethical propriety of a lawyer's representation in a given case.")

To make matters worse, Mr. Rubino represented Toyota concerning its connected vehicle technology (*i.e.*, connecting electronics in the vehicle to external sources). Although Blitzsafe is correct that Mr. Rubino did not specifically litigate patents for Toyota accusing audio interface connections, he did work on cases involving other aspects of Toyota's connected vehicle technology, which implicate many of the same witnesses and engineering documents. Indeed, two of Toyota's potential trial witnesses in this case—Messrs. Satoshi Hata and Brian Inouye— are knowledgeable about Toyota's connected vehicle technology and were witnesses in the AVS Matters that Mr. Rubino litigated for Toyota. Again, Blitzsafe does not dispute that Mr. Rubino had access to, still remembers, and has shared with his colleagues, confidential internal evaluations of these specific trial witnesses. It is difficult to imagine how Mr. Rubino could have been exposed to more relevant confidential information.

Blitzsafe casts Mr. Rubino as a "young" associate with a "minor" role who did not enter appearances in any Toyota litigation, meet Toyota's in-house team, or personally contribute to Toyota's strategy decisions. However, Mr. Rubino started with Kenyon in 2007, meaning that he had been litigating patent cases for nearly 6 years by the time he was first added to the Toyota

5

litigation team. Berkowitz Decl.,[6] at ¶ 15. It is undisputed that he billed more than 1500 hours of time to various Toyota litigation matters. Berkowitz Dec., ¶ 11. Moreover, associates, just like partners, are subject to disqualification where representation would risk disclosure of their clients' confidences. *See* TEX. DISC. R. 1.09 (prohibition against adverse representation applies to "lawyers" and imputing conflict to firm when lawyers "have become *members or associated* with a firm…") (emphasis added); *Cf. Grant*, 888 S.W.2d at 466 (disqualification warranted where law firm temporarily hired opposing counsel's former secretary).

Moreover, as a senior associate on the team, Mr. Rubino was "expected to be familiar with, client communications." Berkowitz Decl., ¶ 11. Mr. Rubino does not dispute this fact. It is of no moment whether Mr. Rubino personally formulated Toyota's strategies or spent time with Toyota's in-house team; the pertinent fact is that Mr. Rubino knows Toyota's playbook for defending and settling patent cases in the EDTX, and of particular relevance to this case, knows Toyota's evaluation of its own trial witnesses. This is far different than the *Duncan* case that Blitzsafe cites, where the moving party offered only a "general, superficial connection" between the prior representations and the existing lawsuit. *Duncan*, 646 F.2d at 1030.

Contrary to Blitzsafe's argument, Toyota's position is narrow, and would not unduly hinder future employment of ex-Kenyon associates. Indeed, Brown Rudnick has now hired at least four former Kenyon associates in just the last twelve months, all of whom have entered appearances and are now suing Toyota in this case. In Toyota's view, however, and given the particular circumstances of this matter, Mr. Rubino is the only one who justifies disqualification, and only then because Blitzsafe recently decided to staff him on this litigation. Mr. Rubino's

---

[6] Refers to the Declaration of Matthew G. Berkowitz, which was submitted as Exhibit A to Toyota's Motion ("Mot.") (Dkt. 143).

involvement with Toyota matters was far too extensive, and much too close to this litigation—in terms of the same court, witnesses, documents and mediator—to attack Toyota's concerns as an unreasonable limitation on associate mobility or overly broad interpretation of the ethical rules.

> **B. Toyota Did Not Waive Its Right to Object to Mr. Rubino's Elevation from Screened-Off Associate to Integrated Team Member Involved with Countering Toyota's Litigation Strategy and Preparing for Examination of Toyota's Witnesses**

Blitzsafe goes to great lengths to prove that Toyota knew, in late 2015, that Mr. Rubino had joined Brown Rudnick, and spews rhetoric about how Mr. Berkowitz and Ms. Lofgren "hid" this fact from the Court. Blitzsafe argues that, as a result of this knowledge, Toyota waived its right to object to the conflict. There is absolutely no case law to support Blitzsafe's position.

Toyota readily admits that it has known for many months that Brown Rudnick hired Mr. Rubino in 2015. The reason why Toyota didn't discuss this in its opening motion, and why Mr. Berkowitz and Ms. Lofgren have different memories on the topic, is because it's a wholly-irrelevant fact. Toyota's motion is not based on Mr. Rubino's mere hire at Brown Rudnick, it is based on Brown Rudnick's very recent decision to staff him on the litigation and utilize his intimate knowledge of Toyota's confidences. Toyota did not learn of *that* decision until August 2016. Until that time, Toyota had provided Mr. Rubino and Brown Rudnick with "professional deference," assuming that they were "honoring their ethical obligations and that [Mr. Rubino] was being screened off from the case." Berkowitz Tr., 156:9-14.[7] There is no case supporting Blitzsafe's position that a former client waives its rights when the circumstances drastically

---

[7] Blitzsafe asserts that Toyota's position would result in disqualification of "every former Kenon associate who worked on an AVS matter (and any law firm who hires that associate) from ever being adverse to Toyota in a patent case." Opp. at 12. This assertion is without merit–it is the specific confidential information that Mr. Rubino acquired, which is relevant to this action, that creates the ethical conflict, not the mere fact that an associate previously worked on a case on behalf of Toyota in some abstract capacity.

change, as they did here. *Compare In re Epic Holdings, Inc.*, 985 S.W.2d 41, 53-54 (Tex. 1998) (rejecting waiver argument because of changed circumstances); *Ullrich v. Hearst Corp.*, 809 F.Supp. 229, 236 (S.D.N.Y. 1992) (finding no waiver and reasoning that, "it may be that on the particular facts, Hearst did not believe that it risked significant violation of its confidences."); *In re Hoar Const., LLC*, 256 S.W.3d 790, 798 (Tex. App. 2008) (trial court did not abuse its discretion in determining that movant had not waived its disqualification arguments after the "litigation landscape changed" and the defendant added counterclaims to the case).

The two "waiver" cases that Blitzsafe cites (Opp. at 19-20) are inapposite.

In *Abney*, the plaintiff filed a motion to disqualify on the eve of trial based on facts that existed more than a year earlier. *Abney*, 984 F.Supp. at 530. Nothing in that case suggests that Toyota waived its right to object when Blitzsafe elevated Mr. Rubino from screened-off associate to integrated team member.

Similarly, in *HECI Exploration*, the plaintiff filed a disqualification motion based on facts that existed 11 months prior, after the non-moving party had moved for summary judgment and the conflicted attorney had participated in six depositions. *HECI Expl. v. Clajon Gas Co.*, 843 S.W.2d 622, 628 (Tex. App. 1992). The key in this case, again, was that the plaintiff had sat on the facts giving rise to the motion until late-stages of the case, which appeared to be a tactical maneuver. Here, Toyota's motion is based entirely on Blitzsafe's deliberate and calculated decision to staff Mr. Rubino on the case. Toyota notified Blitzsafe of its objection to this decision within days, and filed its motion within about one month. If Blitzsafe had any questions about whether Toyota would object to Mr. Rubino's participation in the case, it could have reached out to Toyota and sought a waiver *in advance* of him entering an appearance. It did not, and should not now stand to complain that it would be prejudiced by disqualification, or that

8

Toyota somehow waived its right to maintain the confidentiality of its own privileged information.

### C. Blitzsafe, and Not Toyota, is Engaging in Gamesmanship by Waiting Until Near the End of Discovery to Add Mr. Rubino to the Litigation, Knowing that Courts Disfavor Disqualification Motions As Trial Approaches

It is ironic that Blitzsafe accuses Toyota of gamesmanship, given that Brown Rudnick consciously chose to wait until the end of discovery, about two weeks before Toyota depositions were set to begin, to staff Mr. Rubino on the litigation. Brown Rudnick obviously knew that Mr. Rubino had spent the past few years of his career working mainly for Toyota, and that staffing him on the case would surely result in misuse of Toyota's confidential information. Perhaps Brown Rudnick thought it could avoid disqualification by waiting until an advanced stage of the case to involve Mr. Rubino, knowing that courts sometimes grow reluctant to disqualify a firm as trial nears, or perhaps it thought that it could rely on its newly-created waiver theory. Regardless, Toyota is certainly not the party that can be accused of a tactical maneuver; Toyota objected within days of learning about Mr. Rubino's involvement, and filed a motion just about one month later, which was as soon as it could obtain prior case correspondence from Kenyon & Kenyon and assemble a representative set of evidence documenting the extent of Mr. Rubino's involvement and knowledge. Mot. at 2-3. To the extent that Blitzsafe would suffer harm by Brown Rudnick's disqualification, this is undoubtedly of Brown Rudnick's own doing, and is not a reason that Toyota should be prejudiced or lose protection over its attorney-client confidences. *See Dynamic 3D Geosolutions LLC v. Schlumberger Ltd.*, No. 2015-1628, -1629, --- F.3d ----, 2016 WL 4729505, at *5 (Fed. Cir. Sept. 12, 2016) (citing *In re Am. Airlines*, 972 F.2d 605, 616-20 (5th Cir. 1992) ("We recognize that there are important societal rights implicated by attorney disqualification, such as the right of a party to counsel of its own choice and an attorney's right

to freely practice his or her profession.  However, there is an overriding countervailing concern suffusing the ethical rules: a client's entitlement to an attorney's adherence to her duty of loyalty, encompassing a duty of confidentiality.")

## III.   CONCLUSION

At stake with this motion is Toyota's, and the public's, trust in the attorney-client privilege, and the ethical duties of the legal profession to maintain client confidences.  *See Brennan's Inc v. Brennan's Restaurants, Inc.*, 590 F.2d 168, 172 (5th Cir. 1979) (misuse of client confidences "would undermine public confidence in the legal system as a means for adjudicating disputes.")  Denial of Toyota's motion would effectively mean that its patent lawyers could later sue the company for patent infringement on anything other than the identical in-vehicle systems litigated during prior representations.  Needless to say, this would have a chilling effect on Toyota's willingness to discuss strategy with outside attorneys.  As such, Toyota respectfully requests that the Court grant its motion to disqualify Brown Rudnick, and, if necessary, McKool Smith, and to strike Toyota's deposition testimony taken since July 29th when Mr. Rubino entered a notice of appearance.[8]

Dated: October 11, 2016                                Respectfully submitted,

                                                       */s/ J. Thad Heartfield*
                                                       _____

                                                       William H. Mandir (*pro hac vice*)
                                                       John F. Rabena (*pro hac vice*)
                                                       Yoshinari Kishimoto (*pro hac vice*)
                                                       Brian K. Shelton (*pro hac vice*)
                                                       Fadi N. Kiblawi (*pro hac vice*)

---

[8] McKool Smith should also certify to the Court that it has stayed clear of direct or indirect communication with Mr. Rubino in view of Blitzsafe's assertion in its Opposition Brief that McKool Smith is "intimately familiar with all aspects of this litigation."  Blitzsafe should not gain from misuse of Toyota confidential information, whether it's by way of Brown Rudnick or McKool Smith.

Margaret M. Welsh (*pro hac vice*)
SUGHRUE MION PLLC
2100 Pennsylvania Avenue, NW
Washington, DC 20037
Phone: (202) 293-7600

J Thad Heartfield
State Bar No. 09346800
THE HEARTFIELD LAW FIRM
2195 Dowlen Rd
Beaumont, TX 77706
Phone: 409-866-3318
Fax: 409-866-5789
Email: thad@heartfieldlawfirm.com

*Attorneys for Toyota Defendants*

## CERTIFICATE OF SERVICE

    I certify that on October 11, 2016, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system. Any other counsel of record will be served in accordance with the Federal Rules of Civil Procedure.

*/s/ J. Thad Heartfield*
J. Thad Heartfield